**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

FORT LAUDERDALE FOOD NOT
BOMBS, NATHAN PIM, JILLIAN PIM,
HAYLEE BECKER, and WILLIAM
TOOLE,

       Plaintiffs,

v.

CITY OF FORT LAUDERDALE,

       Defendant.

_____/

Case No:    0:15cv60185

**COMPLAINT FOR DECLARATORY
<u>AND INJUNCTIVE RELIEF AND DAMAGES</u>**

**<u>PRELIMINARY STATEMENT</u>**

1.     Plaintiffs Fort Lauderdale Food Not Bombs, Nathan Pim, Jillian Pim, Haylee

Becker, and William Toole (hereafter collectively "Fort Lauderdale Food Not Bombs") bring

this action for declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983

for past and ongoing injury to their rights guaranteed by the First and Fourteenth

Amendment of the U.S. Constitution.

2.     Fort Lauderdale Food Not Bombs and its members conduct weekly

demonstrations in centrally located downtown Stranahan Park to protest war, poverty and

communicate the message that access to food is a human right and that our society can

end hunger and poverty if our collective resources are redirected from the military and war.

These demonstrations include the display of political signs, a banner with the group's logo,

t-shirts and literature with their anti-war and human rights messages, while the group

simultaneously shares free food with anyone who is hungry as an expression of their

political message.

3.      In October 2014, Defendant City of Fort Lauderdale (City) enacted an ordinance which imposes a permit requirement of obtaining "written consent" from the City for Fort Lauderdale Food Not Bombs to engage in its protected expressive activities and conduct in any public park or public sidewalk throughout the City.  This ordinance, Number C-14-42, which amended Section 47-18.31 of the City's Unified Land Development Code (Section 47-18.31 or ordinance) is, on its face, an unlawful prior restraint on Plaintiffs' First Amendment rights because it imposes the requirement of a permit for protected expression but lacks any standards to guide decisions about whether the City will grant or deny "consent" and under what conditions.

4.      In addition, the ordinance imposes an onerous zoning permit requirement for Food Not Bombs to engage in its expressive conduct anywhere in the City.  Even if this zoning requirement could arguably apply to the group's First Amendment expressive conduct and speech in public places, it also fails to meet constitutional scrutiny as an unlawful prior restraint on speech.

5.      Similarly, the City enforces its park rules to prohibit Plaintiffs from engaging in protected expressive activities which include the provision of food to another person in a public park in furtherance of their political message pursuant to another unlawful prior restraint on protected expression.  Park Rule 2.2 is being applied by the City to prohibit food sharing as part of Plaintiffs' political demonstrations.  The Park Rule requires "written agreement" to share food, but lacks any process to obtain it or standards to guide decisions about whether to grant or deny permission and under what conditions. Revealing the lack of even any rational basis for this regulation, the same park rules allow

picnics to take place without City permission.  *See* Fort Lauderdale Park Rules 2.2 and 6.0.

6.     The City, through its police department, has enforced both the ordinance and Park Rule against members of Fort Lauderdale Food Not Bombs through citations and arrest.  The City's ordinance and Park Rule have effectively banned Fort Lauderdale Food Not Bombs from engaging in First Amendment expressive activities and conduct anywhere in the City.

7.     The ordinance is also an invalid time, place and manner restriction on Plaintiffs' expressive conduct in a traditional public forum because it is not narrowly tailored to meet a legitimate interest and fails to provide ample alternative channels for Plaintiffs' protected expression.

8.     These regulations also infringe on Food Not Bombs' freedom of association with members of their group and the public by burdening their ability to engage in political organizing for positive social change in support of their group's mission and purpose.

9.     Section 47-18.31 and Park Rule 2.2 also violate Plaintiffs' due process rights guaranteed by the Fourteenth Amendment of the U.S. Constitution by failing to provide adequate notice of prohibited conduct; criminalizing otherwise innocent conduct without government permission, but providing no system by which permission may be obtained; and authorizing and encouraging arbitrary enforcement through a lack of clear and definite standards to guide city officials in determining whether to provide "written consent" or "written agreement" for these expressive activities in public spaces.

## JURISDICTION

10.    This action arises under the First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

11.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.

## VENUE

12.     Venue lies in the Southern District of Florida pursuant to 28 U.S.C. §1391(b). The parties are located and all of the acts and omissions complained of herein occurred and will continue to occur in the Southern District of Florida.

## PLAINTIFFS

13.     Plaintiff FORT LAUDERDALE FOOD NOT BOMBS is an unincorporated association affiliated with the grassroots international Food Not Bombs movement that engages in peaceful political direct action to communicate its message that our society can end hunger and poverty if we redirect our collective resources from the military and war and that food is a human right, not a privilege, which society has a responsibility to provide to all.  Food Not Bombs shares food with anyone, without restriction, to communicate this message and organize for positive social change.  The group does not serve food as a charity, but instead as an expression of and to further their political message.  Food Not Bombs serves vegan or vegetarian food to reflect its political dedication to nonviolence against all, including animals.  Section 47-18.31 of the City Code and Park Rule 2.2 infringe on the group's ability to communicate its message without risking citation or arrest for assembling and sharing food in public parks.

14.     Plaintiff JILLIAN PIM is a resident of Broward County and a member of Fort Lauderdale Food Not Bombs.  She dedicates time to sharing food in public parks as a form of political expression to demonstrate that society can end hunger and poverty if we

4

redirect our resources towards providing food for all instead of weapons of war.  She shares meals with other individuals who attend to communicate solidarity with all who experience hunger and to associate with other members of the community in their shared political beliefs that food is a human right.  She has been affiliated with Ft. Lauderdale Food Not Bombs since 2010.  She individually opposes Section 47-18.31 of the City Code and Park Rule 2.2 and continues to assemble with others to share food in public places, risking arrest or citation.

15.    Plaintiff NATHAN PIM is  a resident of Broward County and a member of Fort Lauderdale Food Not Bombs.  He dedicates time to sharing food in public parks as a form of political expression to demonstrate that society can end hunger and poverty if we redirect our resources towards providing food for all instead of weapons of war.  He shares meals with other individuals who attend to communicate solidarity with all who experience hunger and to associate with other members of the community in their shared political beliefs that food is a human right.  He has been affiliated with Food Not Bombs for ten years and Fort Lauderdale Food Not Bombs since 2010.  He individually opposes Section 47-18.31 of the City Code and Park Rule 2.2 and continues to assemble with others to share food in public places, risking citation or arrest.

16.    Plaintiff HAYLEE BECKER is a resident of Broward County and a member of Fort Lauderdale Food Not Bombs.  She dedicates time to sharing food in public parks as a form of political protest to demonstrate that society can end hunger and poverty if we redirect our resources towards providing food for all instead of weapons of war.  She shares meals with other individuals who attend to communicate solidarity with all who experience hunger and to associate with other members of the community in their shared

political beliefs that food is a human right.  She has been affiliated with Fort Lauderdale Food Not Bombs since 2007.  She individually opposes Section 47-18.31 of the City Code and Park Rule 2.2 and continues to assemble with others to share food in public places in violation of the ordinance, risking citation or arrest.

17.     Plaintiff WILLIAM TOOLE is a resident of Broward County and a member of Fort Lauderdale Food Not Bombs.  He dedicates time to sharing food in public parks as a form of political protest to demonstrate that society can end hunger and poverty if we redirect our resources towards food instead of weapons of war.  He shares meals with other individuals who attend to communicate solidarity with all who experience hunger and to associate with other members of the community in their shared political beliefs that food is a human right.  He has been affiliated with Food Not Bombs since 2008 and with Fort Lauderdale Food Not Bombs since February 2014.  He individually opposes Section 47-18.31 of the City Code and Park Rule 2.2 and continues to assemble with others to share food in public places in violation of the ordinance, risking citation or arrest.

## DEFENDANT

18.     Defendant CITY OF FORT LAUDERDALE is a municipal entity organized under the laws of the State of Florida, with the capacity to sue and be sued.

19.     The City Commission sets final policy on the creation and adoption of City ordinances.

20.     The City is the legal entity responsible for the police department known as the City of Fort Lauderdale Police Department (FLPD).

21.     The FLPD is authorized to enforce Florida statutes and City ordinances.

22.     The FLPD has authority under the City's Unified Land Development Code

6

and under the City's Code of Ordinances to enforce violations of the Code.

23.     Section 47-18.31 and Park Rule 2.2 are official policies of the City.

24.     The City is sued for injunctive and declaratory relief and compensatory damages on the basis of acts of officers, agents and employees of FLPD and the City, which were taken pursuant to official policy, practice and/or custom.

25.     At all times relevant herein, the officers, agents, and employees of FLPD and the City were acting under color of state law.

## FACTUAL ALLEGATIONS

**Section 47-18.31 of the City's Unified Land Development Code and Park Rule 2.2**

26.     The City's amendments to Section 47-18.31 revised the definition of Social Service Facility to include, *inter alia*, an "Outdoor Food Distribution Center." (Ex. 1.)

27.     The City defines "Outdoor Food Distribution Center" as "[a]ny location or site temporarily used to furnish meals to members of the public without cost or at very low cost as a social service as defined herein and is generally providing food distribution services exterior to a building or structure or without permanent facilities on a property."  Sec. 47-18.31(B)(4), City Code.

28.     The City defines "[s]ocial services" as "[a]ny service provided to the public to address public welfare and health such as, but not limited to, the provision of food; hygiene care, group rehabilitative or recovery assistance or any combination thereof; rehabilitative or recovery programs utilizing counseling, self-help or other treatment or assistance; and day shelter or any combination of same."  Sec. 47-18.31(B)(6), City Code.

29.     The City prohibits "Outdoor Food Distribution Centers" unless an individual

applies for and receives a zoning permit.

30.    In addition to a zoning permit, individuals wishing to share food in public places such as City parks and on City sidewalks must also request and receive permission in the form of "written consent" from the City.

31.    The City also enacted a number of regulations for "Outdoor Food Distribution Centers" that require the following:

    i.     If a dining area is provided, it shall meet all state, county and city requirements for food service establishments or similar uses.

    ii.     Shall not be closer than 500 feet from another Food Distribution Center or Outdoor Food Distribution Center.

    iii.     Shall not be any closer than 500 feet from a residential property as defined in Sec. 47-35 of the ULDR.

    iv.     Shall provide restroom facilities, portable toilets or other similar facilities for persons preparing and serving food as well as for the persons being served food.

    v.     Shall provide equipment and procedures for the lawful disposal of waste and wastewater at the location.

    vi.     Shall provide equipment and procedures at the location for hand washing.

    vii.     Shall provide written consent from the property owner to conduct that activity on the property.

    viii.     Shall have one person, who will be present at the location at all times that food is being prepared and served, who has received Food Service Manager Certification under Section 509.039, Florida Statutes.

    ix.     Shall have adequate storage of food at a temperature of: (a) 41° F or below or (b) 135° F or above.

    x.     Shall provide transportation of food in a clean conveyance.

    xi.     Shall provide service of food within four (4) hours of preparation.

    xii.     Where non-prepackaged food is served, a convenient hand washing facility for persons preparing and serving the food; which hand washing facility must at a minimum include: (a) A five (5) gallon container with a spigot that provides free-flowing water and a catch

> bucket to collect wastewater from hand washing. (b) Soap and individual paper towels.
>
> xiii.   Any wastewater generated at a location (including, but not limited to, wastewater from hand washing, utensil washing, sinks, and steam tables) must be placed in a container approved by the director until properly disposed of into a sanitary sewer system or in a manner that is consistent with federal, state, and local regulations and requirements relating to liquid waste disposal.

Sec. 47-18.31(C)(2)(c), City Code.

32.     The City claims, without support, that the ordinance's "Purpose" is its belief that the provision of food as a social service "by its very nature" has "serious objectionable characteristics" and that it "may result in adverse secondary effects on adjacent properties."  Sec. 47-18.31(A), City Code.

33.      The City's Code makes it "unlawful to use any property within the city in violation of the [Unified Land Development Code]."  Sec. 47-34.2(B), City Code.  A violation of the Code is punishable as provided in Section 1-6 of the City's Code by a fine not to exceed $500 and/or by imprisonment for a term not to exceed sixty (60) days.  Sec. 47-34.2(C), City Code; *see also* Sec. 1-6(c), City Code.

34.     The City Manager's Memo to the Mayor and members of the City Commission on October 7, 2014, states that the revisions to the ordinance are intended to bring the City into compliance with a court order in *Abbott v. City of Ft. Lauderdale*, 783 So. 2d 1213 (Fla. 4th DCA 2001) (challenge brought under the Florida Religious Freedom Restoration Act) and will permit the City to resume enforcement of City Park Rule 2.2.

35.     City Park Rule 2.2 states:   "Social Services. Parks shall be used for recreation and relaxation, ornament, light and air for the general public.  Parks shall not be used for business or social service purposes unless authorized pursuant to a written

agreement with City.  As used herein, social services shall include, but not be limited to, the provision of food, clothing, shelter or medical care to persons in order to meet their physical needs." (Ex. 2.)

36.     Violation of the Park Rule is a violation of the ordinance because both require written permission from the City to share food in a City park.  Violation of the Park Rule also carries independent penalties.  A person in violation of a park rule may be ordered to leave all City parks, beaches and recreation facilities for a minimum 24-hour period up to a six-month period of time under penalty of arrest for trespassing.

37.     The City's ordinance and Park Rule 2.2 effectively ban sharing food in all public parks in the City without obtaining prior written consent from the City.  The ordinance also effectively bans all food sharing on public sidewalks without obtaining prior written consent from the City.

**Application of Section 47-18.31 and Park Rule 2.2 to Plaintiffs' Freedom of Expression and Association**

38.     The City has applied Section 47-18.31 and Park Rule 2.2 to prohibit Plaintiffs' protected expression and symbolic conduct and to infringe on their right to association for expressive purposes in public parks to communicate their political message that access to food is a human right and that society should redirect its collective resources towards ending hunger instead of waging war.

39.     Plaintiffs share food during their Friday demonstrations at Stranahan Park as symbolic expression of the group's political beliefs that food is a human right and to communicate a message of social unity and solidarity with people who are hungry, which is a human condition shared by all.  Plaintiffs are engaged in expressive conduct protected

10

by the First Amendment.

40.     Food sharing is inherently symbolic expression and conduct.  Sharing food with another person communicates messages of intimacy, affirms social ties, and communicates group solidarity.  Food is essential to maintain life and promote health and is a basic human need.  Food is used by every human society on earth to communicate messages including the affirmation of social ties, the practice of religious beliefs, and the expression of national and ethnic identities.  Food is used to reinforce messages of group solidarity and for a society to engage in ritual, ceremony, and celebration.  Food has symbolic meaning because it is literally taken into the body and has associations of life, home, family, and health.

41.     Plaintiffs intend to convey a particularized message at their demonstrations that food is a human right and that our society can end hunger and poverty if we redirect our collective resources from the military and war to meeting basic social needs and providing food to all.  The political message conveyed by Food not Bombs is apparent to a reasonable observer.

42.     Since 2006, Fort Lauderdale Food Not Bombs has engaged in lawful protected expression by sharing vegan or vegetarian food every Friday at Stranahan Park in the late afternoon or early evening to communicate their political message.  Prior to the amendment of Section 47-18.31 and the resumption of enforcement of Park Rule 2.2, the group was not required to have any form of permit or advance permission from the City to hold these weekly demonstrations.

43.     Plaintiff Fort Lauderdale Food Not Bombs shares food with anyone, rich or poor, without restrictions.  The volunteers spend time interacting and speaking with

members of the public who attend their demonstration about the group's political activism and social issues of public concern.

44.     Volunteers for Food Not Bombs prepare and eat the food they share with all people who come to remove the stigma of being hungry, which is a human condition shared by all, and to treat all people as equals and friends, regardless of income.  The weekly demonstrations are for the purpose of sharing a meal together as a form of symbolic expression of their political message, and to communicate messages of social unity and solidarity, not distribution of food as a charity.

45.     Fort Lauderdale Food Not Bombs does not share food "to address public welfare and health" but, instead, as a form of constitutionally protected expression to demonstrate that our society can end hunger and poverty by redirecting resources away from the military and towards the fulfillment of the human right to food for all.

46.     At its Friday demonstrations, Fort Lauderdale Food Not Bombs sets up a folding table under a pavilion in Stranahan Park to place vegetarian or vegan food items that were donated or prepared by volunteers.  They also have a large, visible banner with the name of the group "Food Not Bombs" which carries the group's logo, a purple hand grasping a carrot.  The group also passes out literature or flyers with political speech about the group's mission and other issues of public concern.

47.     Because public spaces are available to all, regardless of money or resources, Fort Lauderdale Food Not Bombs specifically chooses to share food in a public park to communicate and in furtherance of its message that food should be available to all people. Almost all of the food is provided by donations, expressing the group's message that food can be given to people who need it if a society shifts its priorities to food and not weapons

of war.

48.     The demonstrations sometimes also include music, puppet shows, protest chants or other activities to inform the public about human rights issues and to encourage the public to become involved in organizing and taking action for positive social change.

49.     In addition to handing out flyers or literature about political and human rights issues of public concern, Fort Lauderdale Food Not Bombs members speak with individuals who attend the demonstrations to inform them about the purpose of their political activism and to encourage members of the public to get involved in changing society so that the human right to food becomes a collective priority.

50.     Fort Lauderdale Food Not Bombs members also associate with each other and members of the public during their demonstrations for the purposes of organizing other political protests and demonstrations, sharing information to further their work, informing individuals about upcoming political protests and demonstrations, and encouraging the public to participate in calling for nonviolent social change.

51.     Stranahan Park is approximately 1.6 acres and is located at 10 East Broward Boulevard in the City.

52.     Stranahan Park is a public park located in the center of the City's downtown. It is a quintessential public forum, a natural and proper place for the exercise of First Amendment rights.

53.     Fort Lauderdale Food Not Bombs specifically chose Stranahan Park as the location for its demonstrations because it is visible to members of the public who are passing by and has traditionally been a battleground over the City's attempts to reduce the visibility of homelessness from public view by attempting to exclude people from the park.

13

The location of Stranahan Park is inextricably intertwined with Fort Lauderdale Food Not Bombs' message that food, like access to public places, is a right and not a privilege.

54.     From 2012 to the present, Stranahan Park has been altered by the addition of ornamental foliage to previously grassy areas, and the installation of black metallic fencing with gates that are locked during hours when the park is closed.  These physical alterations of the Park were part of a concerted effort by the City to move poor and homeless people out of the Park.

55.     By continuing to share food with the homeless in Stranahan Park, in the heart of downtown Fort Lauderdale, despite the City's efforts to restrict use of this public space, Fort Lauderdale Food Not Bombs is protesting that access to public spaces is a right to be shared by all, not a privilege to be limited by the government to selected individuals.

56.     The City has applied Section 47-18.31 to Plaintiffs' Friday night political demonstrations, improperly classifying them as an "Outdoor Food Distribution Center."

57.     Plaintiffs are engaged in protected First Amendment expression; they are not engaged in the provision of social services as defined by Section 47-18.31.  However, the City is broadly applying this Section to prohibit their weekly political demonstrations at Stranahan Park.

58.     The City is also applying Park Rule 2.2 to prohibit Plaintiffs' constitutionally protected demonstrations that communicate their political message through the symbolic expression of sharing food.

**Section 47-18.31 and Park Rule 2.2 are Unlawful Prior Restraints**

59.     The ordinance prohibits outdoor food distribution in public parks without permission (i.e. "written consent") from the City.  Likewise, Park Rule 2.2 forbids the

14

provision of food to meet a person's physical needs in a public park unless there is permission (i.e. "written agreement") from the City.  Both the ordinance and the Park Rule impose the requirement to obtain permission prior to engaging in this form of protected expression on City property, but fail to specify under what conditions the City may provide permission, or the procedure for obtaining permission.  These are unlawful prior restraints on protected expression.

60.    Stranahan Park is located in zoning district "RAC-CC" which requires a conditional use permit to have an "Outdoor Food Distribution Center."  This requirement for a zoning permit is in addition to the "written consent from the property owner" which must be obtained by Fort Lauderdale Food Not Bombs to engage in its protected expression in any City park or on any public sidewalk.

61.    Although Plaintiffs are not developing property in the City or erecting any permanent structures, Section 47-18.31 requires them to go through an onerous zoning process designed for developers and private landowners to share food in a public park and engage in First Amendment expressive conduct.

62.    The approval process for a conditional use permit requires filing an application with the planning and zoning board.  This process first requires review and approval by a development review committee, and then another 20-60 days delay until a public hearing is held by the planning and zoning board.  After approval by the planning and zoning board, the City Commission has 30 days to adopt a motion seeking review of the decision.  If the City Commission does not review, the decision becomes final after the thirty period with no action taken and then the permit does not take effect until another 30 days after that.

15

63.     The approval process would have to be repeated for every location that Plaintiffs wished to share food in a public place as a form of symbolic expression even if it was only a temporary one-time event at a public rally.

64.     The application of zoning requirements to expressive conduct in a public park and on public sidewalks makes it effectively impossible for Food Not Bombs to ever comply, making it so that there is no place in the City where Plaintiffs are permitted to share food in traditional public forums as expression of their political message.

65.     The City's ordinance fails to allow for engaging in spontaneous protected expression by Food Not Bombs in response to rapidly developing local and world events involving the U.S. government's military intervention abroad, homelessness, and other social issues of public concern to Fort Lauderdale Food Not Bombs.

**Section 47-18.31 and Park Rule 2.2 are Invalid Time, Place and Manner Restrictions**

66.     Section 47-18.31 is an invalid time, place and manner restriction on Plaintiffs' expressive conduct in a traditional public forum.

67.     The City alleges that its interest in regulating outdoor food sharing is that it believes homelessness is unacceptable and that providing food on the street to homeless individuals is perpetuating homelessness.  The City's asserted interest in restricting food sharing because of its erroneous belief that it perpetuates homelessness is not legitimate because it is rooted in misconceptions about the causes of homelessness.  People do not choose to be homeless to eat free food provided by Plaintiffs and other individuals.  The City's ordinance does not have any relationship to the City's asserted interest in ending homelessness.

68.     The City also alleges that the purpose of the ordinance is to "promote the

16

health, safety, morals and general welfare of the residents of the City of Ft. Lauderdale." The ordinance is not tailored to meet these interests.

69.     The ordinance, however, requires Plaintiffs to meet onerous food safety standards that have no relationship to the protection of health and safety.  The City's ordinance requires that food shared "without cost" or at "very low cost" comply with food handling requirements reserved for perishable or potentially hazardous foods sold for a profit.  For example, the City's ordinance requires that food shall be provided within four (4) hours of preparation and "stored" at a temperature of 41 degrees or below or at 135 degrees or above regardless of whether the food is perishable or potentially hazardous. The City irrationally requires all food meet these requirements even if there is no risk of spoilage and, therefore, no risk to public safety if food is stored at different temperatures from the ones specified by the ordinance or prepared more than four hours in advance.

70.     The ordinance contains onerous, burdensome restrictions that apply to the provision of food to as few as two people in a public place including requiring that Plaintiffs provide restroom facilities, meet detailed requirements for handwashing and disposal of wastewater, have food service management certification under Florida Statutes Section 509.039 and meet requirements for food service establishments.

**Injury to Plaintiffs' Constitutional Rights**

71.     Since the ordinance took effect on October 31, 2014, Fort Lauderdale Food Not Bombs has continued its weekly demonstrations at Stranahan Park.  Multiple officers from FLPD were at the demonstrations on November 7 and 14, 2014.  On November 7, FLPD arrested and briefly took into custody two individuals and issued a notice to appear in court to a third individual, all of whom were members or volunteers with Fort Lauderdale

17

Food Not Bombs.  On November 14, three members or volunteers of Fort Lauderdale Food Not Bombs were issued notices to appear.

72.    One member of Fort Lauderdale Food Not Bombs was arrested on November 7, 2014, for violation of City Ordinance Section 47-18.31-c2c for "providing social services in the Stranahan Park Pavilion" and violating Park Rule 2.2.  The arrest affidavit states that she was in violation of the ordinance for not providing restrooms, not providing proper hand washing equipment, and not having "consent from the property owner to conduct activity on the listed property."

73.    Another member of Fort Lauderdale Food Not Bombs was cited on November 7, 2014, for violation of City Ordinance Section 47-18.31.c2c for "providing social services in Stranahan Park."  The arrest affidavit states that he "did not have consent from the owner of location to conduct said activity and did not meet established regulations as set forth in ordinance."

74.    Another member of Fort Lauderdale Food Not Bombs participated in the November 21, 2014, demonstration at Stranahan Park.  She did not receive a citation at the event, but a law enforcement officer later personally hand delivered a notice to appear in court to her home address.

75.    The City has violated Plaintiffs' First Amendment rights through the enforcement of an unlawful prior restraint which required Plaintiffs to apply for "written consent" or a "written agreement" from the City prior to exercising those rights.

76.    Plaintiffs fear future harassment, arrest and prosecution for continuing to engage in their weekly demonstrations at Stranahan Park.  The ordinance and Park Rule have a chilling effect on Plaintiffs' exercise of free speech and association.

77.     Plaintiffs believe it is the right of all people to associate with others in public places for expressive purposes.  Plaintiffs continue to assemble together and hold weekly demonstrations by sharing food as a form of symbolic expression of social unity and solidarity in the human condition of hunger and to communicate their political beliefs that food is a human right.  They oppose the City for making this innocent and protected expressive conduct a crime and unlawfully interfering with their political message that our collective resources should be redirected from funding war to ending hunger.

78.     People who want to associate with Plaintiffs for purposes of engaging in these weekly political demonstrations do so by assuming a risk of citation or arrest.

79.     Previous food donors are unwilling to continue to donate food to Plaintiffs for use in their weekly political demonstrations because the City has criminalized Plaintiffs' expressive conduct everywhere in the City.

**Application of Section 47-18.31 to Plaintiffs' Due Process Rights**

80.     The ordinance's definition of "Outdoor Food Distribution Center" is vague as to the regulated conduct.  The definition fails to specify how many "meals" must be provided to "members of the public" prior to being considered an "Outdoor Food Distribution Center."  Likewise, the definition only applies to locations or sites used "temporarily" to provide meals, making it unclear if there is activity that is excluded from the definition because it is too short or too long in duration.  The ordinance fails to define "very low cost meal."

81.     The ordinance defines "social service" as "[a]ny service provided to the public to address public welfare and health such as ... the provision of food."  The ordinance's definition of "social service" is vague because it is unclear how police are to make the

determination that food is being provided "to address public welfare and health," as opposed to sharing food with friends and family because they are eating lunch together as an expression of social unity and intimacy, or a bakery that is giving away free samples of bread as an advertising campaign.

82.     The ordinance fails to define other key terms and phrases such as "dining area" or to specify how the requirement that food shall be transported in a "clean conveyance" is to be enforced.

83.     Park Rule 2.2 forbids the provision of food to meet a person's "physical needs" in a public park unless there is a written agreement with the City.  It is unclear how the City determines whether food is being provided to meet a person's "physical needs." Food is essential to sustain all human life and generally is consumed to satisfy simple nutritional and survival needs. Food is also consumed as part of religious ritual, to celebrate anniversaries and birthdays, and for pleasure.  Many people share food in public parks for these reasons, at picnics or other informal gatherings.  Upon information and belief, the City has not enforced Park Rule 2.2 against these individuals, but has only done so against Plaintiffs and other individuals and organizations seeking to share food with homeless persons.  The Rule therefore fails to provide adequate notice of prohibited conduct, thereby authorizing and encouraging arbitrary and discriminatory enforcement.

84.     The ordinance and Park Rule 2.2 are unconstitutionally vague on their face for failure to provide clear and definite standards to guide City officials in determining whether to provide "written consent" for food distribution on City property including public parks.

85.     The application of zoning requirements to the conduct of temporarily sharing

food in a public place is unconstitutionally vague as it is unclear how Plaintiffs are to comply with the zoning restrictions for engaging in this activity as part of protected expressive activity in traditional public fora such as in City parks or on City sidewalks.

86.    The bans contained in Park Rule 2.2 on providing food to any person to meet their "physical needs," and in the ordinance on providing any food "to the public" also violate due process by criminalizing otherwise innocent conduct without government permission, but providing no system by which government permission may be obtained.

**FIRST CLAIM FOR RELIEF**
**FREE SPEECH AND ASSOCIATION- FIRST AMENDMENT**

87.    Plaintiffs incorporate and re-allege paragraphs 1 through 86, as if fully set forth here.

88.    Section 47-18.31 and Park Rule 2.2 infringe on Plaintiffs' freedom of association with members of their group and the public to engage in political organizing for positive social change in support of their group's purpose and mission.  The ordinance and Park Rule unlawfully restrain Plaintiffs' ability to participate in the public debate about the human right to food by prohibiting them from exercising their First Amendment rights to expression and association.

89.    Infringements on the right to expressive association must be justified by regulations adopted to serve compelling interests, unrelated to expression of ideas, that cannot be achieved through means significantly less restrictive on associational freedoms. The City's ordinance fails to meet this standard because the City is prohibiting Plaintiffs from associating with members of the public to share food as symbolic expression of their political message that food is a human right and to communicate their message of

21

solidarity and social unity with anyone who is hungry which is a human condition shared by all.  The City's interests for restricting this expressive activity are not compelling, and can be achieved through means significantly less restrictive on associational freedoms. The City's restrictions essentially make it unlawful for Ft. Lauderdale Food Not Bombs to associate for expressive purposes of communicating its message that food is a human right by sharing food anywhere in the City.

90.    Section 47-18.31, on its face, acts as an unlawful prior restraint on Plaintiffs' First Amendment rights because the City requires them to first obtain "written consent" from the property owner, thereby barring them from engaging in lawful expressive activity in the park without first applying for and receiving permission from City officials to use the public forum in advance of actual expression.  The City's ordinance lacks any process to obtain this permission or any standards to guide decisions about whether the City will grant or deny permission and under what conditions.

91.    Park Rule 2.2 also acts as an unlawful prior restraint on Plaintiffs' protected expression because the City requires Plaintiffs to first obtain "written agreement", thereby barring them from engaging in lawful expressive activity in a public park without first applying for and receiving permission from City officials to use the public forum in advance of actual expression.  The City's Park Rules lack any process to obtain permission or any standards about whether the City will grant or deny permission and under what conditions.

92.    There is no City ordinance or Park Rule that requires groups to obtain a permit to assemble for purposes of having a protest on City sidewalks or in City parks but Plaintiffs are prohibited from engaging in protected expression that involves sharing food to communicate and in furtherance of their political message without written permission

from the City.

93.     The City failed to provide narrow, objective and definite standards to guide City officials in determining whether to issue  "written consent" under Section 47-18.31 or "written agreement" under Park Rule 2.2.  The ordinance and Park Rule lack procedural safeguards to ensure against unlawful infringement on protected speech.  Because the ordinance and Park Rule fail to set forth definite standards of review, the ordinance grants unfettered discretion to a City official to arbitrarily grant or deny a request.

94.     The City has empowered its officials to impermissibly examine the content of the message that is conveyed by food sharing to determine whether the terms of the ordinance and Park Rule 2.2 apply.  If food is being shared as a "social service" defined by the City as services "provided to the public to address public welfare and health" or "to meet physical needs," then the ordinance and Park Rule apply to the conduct.  This empowers City officials to pick and choose between food sharing that is authorized and food sharing that is prohibited based on the content of the message conveyed–distinctions prohibited by the First Amendment.

95.     The ordinance also fails to establish substantive constraints on the City official who reviews requests for "written consent" or for a "written agreement" to ensure against arbitrary and discriminatory limitations on protected First Amendment activity, provide for prompt judicial review, or place time constraints on issuance or denial of authorizations.  The absence of any standards means that the ordinance and Park Rule vest public officials with unbridled discretion and invite content-based decisions.  These are the hallmarks of an unlawful prior restraint on constitutionally protected expression.

96.     Section 47-18.31 acts as an unlawful prior restraint as-applied to Plaintiffs

because it requires them to apply for and receive a zoning permit to assemble and share food temporarily with each other and members of the public in a city park.  The use of a zoning ordinance to restrict expressive conduct in traditional public fora in the entire City is unreasonable, overly burdensome and not narrowly tailored to meet the City's alleged interest.

97.     As applied to Plaintiffs' constitutionally protected expression and conduct, the zoning requirements operate as an unlawful prior restraint in a quintessential public forum.

98.     The City is applying Section 47-18.31 and Park Rule 2.2 to prohibit Plaintiffs from engaging in expressive conduct in a quintessential public forum in violation of Plaintiffs' constitutionally protected First Amendment rights.

99.     Plaintiffs are engaged in expressive conduct protected by the First Amendment at their weekly political demonstrations through symbolic expression of food sharing at Stranahan Park.  Plaintiffs intend to convey a particularized message that food is a human right and that our society can end hunger and poverty if we redirect our collective resources from the military and war to meeting basic social needs and providing food to all.  Food sharing is inherently expressive conduct and the political message conveyed by Food Not Bombs is apparent to a reasonable observer.

100.    The ordinance and Park Rule fail constitutional scrutiny as an unlawful and unreasonable time, place or manner restriction on expressive activity and conduct in a traditional public forum.

101.    The City's alleged interest in regulating outdoor food sharing is based on an an erroneous belief that homelessness is unacceptable and that providing food on the street is perpetuating homelessness.  This is not a legitimate government interest because

24

it is rooted in misconceptions about the causes of homelessness and unsupported by any evidence.

102.   The City's ordinance is not narrowly tailored to meet this interest because there is no evidence that the provision of food to members of the public at free or low cost either causes or perpetuates homelessness or that elimination of free food sources will end homelessness.

103.   The City has also alleged that the so-called "secondary effects" of "outdoor food distribution" justify the ordinance because it finds that "by its very nature" it has "serious objectionable characteristics".

104.   However, the City has no evidence that provision of food at free or "very low cost" (as opposed to low cost food which is not prohibited by the ordinance) "by its very nature" is harmful in any way or can result in adverse secondary effects.

105.   The ordinance and Park Rule are not narrowly tailored as there is no size threshold to invoke their requirements.  The ordinance and Park Rule apply to the provision of food to as few as two "members" of the public.

106.   The City's ordinance is predominantly aimed at the suppression of Plaintiffs' message that food is a human right based on the City's disagreement with that message. The City believes that food should be restricted and not provided to homeless people because it believes the provision of food for free or at "very low cost" which is "provided to the public to address health and welfare" or to "meet physical needs" should be restricted because it causes and perpetuates homelessness.  A determination of whether the ordinance applies to particular conduct requires examination of the purpose of the food sharing to determine whether it is prohibited or not.

25

107.    The City has also alleged food safety is an interest in regulating the provision of outdoor food distribution.  The City's alleged interest of food safety is a significant government interest, but the City's ordinance contains unreasonable requirements that are not narrowly tailored to meet this interest.

108.    The City's ordinance and Park Rule also fail to provide ample alternatives for Plaintiffs to express their message because they are effectively prohibited from sharing food as symbolic expression of their political message in any public park or on any sidewalk throughout the City.

109.    Plaintiffs' political message is inextricably intertwined with the location of Stranahan Park as a public space that became a battleground over the visibility of homelessness in the City, and there are not alternative locations that can substitute for access to the park.  Even if there were, the City's ordinance and Park Rule operate to burden Plaintiffs' protected symbolic expression and conduct in any park in the City with unreasonable restrictions.

110.    The City's ordinance fails to allow for spontaneous expression and speech.

111.    Section 47-18.31 on its face and as applied to Plaintiffs has a chilling effect on constitutionally protected expression.

112.    As a direct and proximate result of the deficiencies in Section 47-18.31, Plaintiffs are deprived of their right to free speech in quintessential public fora.

113.    The ordinance on its face and as applied to Plaintiffs violates their rights under the First Amendment of the U.S. Constitution.

114.    Plaintiffs have suffered and continue to suffer irreparable harm for which there is no adequate remedy at law and they have been directly damaged as a result of the

26

City's conduct.

## SECOND CLAIM FOR RELIEF
## DUE PROCESS - FOURTEENTH AMENDMENT

115.    Plaintiffs incorporate and re-allege paragraphs 1 through 86 as if fully set forth here.

116.    Section 47-18.31 and Park Rule 2.2 are unconstitutionally vague on their face and as applied to Plaintiffs' weekly demonstrations in Stranahan Park as the ordinance and Rule fail to provide adequate notice of prohibited conduct and authorize and encourage arbitrary enforcement.

117.    The ordinance and the Park Rule fail to define key terms and phrases.

118.    The City has empowered its officials to impermissibly examine the content of the message that is conveyed by food sharing to determine whether the terms of the ordinance and Park Rule 2.2 apply.  If food is being shared as a "social service" defined by the City as services "provided to the public to address public welfare and health" or "to meet physical needs," then the ordinance and Park Rule apply to the conduct.  This empowers City officials to pick and choose between food sharing that is authorized and food sharing that is prohibited based on imprecise and unascertainable standards.

119.    The ordinance and Park Rule are unconstitutionally vague on their face and as applied to Plaintiffs for failure to provide clear and definite standards to guide city officials in determining whether to provide "written consent" or "written agreement" for food distribution on city property including public parks.

120.    The ordinance on its face and as-applied to Plaintiffs is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment of the U.S.

27

Constitution.

121.    As a direct and proximate consequence of the deficiencies in the ordinance and Park Rule 2.2, Plaintiffs are deprived of due process while seeking to exercise their right to free speech in quintessential public fora.

122.    The bans on providing food, contained in Park Rule 2.2 to any person to meet their "physical needs" and in the ordinance by providing any food "to the public," also violate due process by criminalizing otherwise innocent conduct without government permission, but providing no system by which government permission may be obtained.

123.    Plaintiffs have suffered and continue to suffer irreparable harm for which there is no adequate remedy at law and have been directly damaged as a result of the City's conduct.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.    Issue a declaration that Section 47-18.31 and Park Rule 2.2 of the City Code violate the First and Fourteenth Amendments of the U.S. Constitution facially and as applied to Plaintiffs;

B.    Issue an injunction prohibiting the City from enforcing Section 47-18.31 and Park Rule 2.2 of the City Code;

C.    Award compensatory damages to Plaintiffs for the loss of protected First and Fourteenth Amendment rights;

D.    Award Plaintiffs attorneys' fees and costs; and

E.    Provide any other relief that is just and proper.

Dated: <u>January 29, 2015</u>.

Respectfully submitted,

<u> /s/ Kirsten Clanton                                   </u>
KIRSTEN CLANTON, Fla. Bar No. 17179
Kirsten.clanton@southernlegal.org
JODI SIEGEL, Fla. Bar No. 511617
Jodi.siegel@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)

MARA SHLACKMAN, Fla. Bar No. 0988618
mara@shlackmanlaw.com
Law Offices of Mara Shlackman, P.L.
757 Southeast 17th Street, PMB 309
Fort Lauderdale, Florida 33316
(954) 523-1131
(954) 206-0593 (fax)

ANDREA COSTELLO, Fla. Bar No. 0532991
Andreac@laccf.org
Legal Advocacy Center of Central Florida
1610 S.E. 36th Avenue
Ocala, FL 34471
(352) 482-0179
(352) 482-0181 (fax)

ATTORNEYS FOR PLAINTIFFS